1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                            SAN FRANCISCO DIVISION

11  THOMAS D. TAYLOR, JR., an individual,          No. 3:15-cv-00132-LB

12              Plaintiff,                 **ORDER APPROVING CLASS-ACTION**
                                           **SETTLEMENT, DISMISSING CASE, AND**
13          v.                             **ENTERING FINAL JUDGMENT**

14  MEADOWBROOK MEAT COMPANY, INC.;        [RE: ECF Nos. 47 & 49]
    AND DOES 1-100, inclusive,
15
               Defendants.
16

17

18                                **INTRODUCTION**

19      The plaintiff Thomas D. Taylor, Jr., worked as a truck driver for Meadowbrook Meat

20  Company, and on behalf of himself and other employees, sued Meadowbrook for wage-and-hour

21  violations. He also sued Meadowbrook for not allowing him medical leave and ultimately for

22  terminating his employment.[1] The court previously granted his unopposed motion for preliminary

23  approval of the proposed class-action settlement.[2] The plaintiff moved for final approval of the

24  settlement.[3] The court held a fairness hearing on September 15, 2016.[4] The court finds the

25  _____

26  [1] Complaint — ECF No. 8. Citations refer to material in the Electronic Case File ("ECF"); pinpoint
    citations are to the ECF-generated page numbers at the top of documents.

27  [2] Order — ECF No. 43.

28  [3] Motion — ECF No. 49.
    [4] Minute Order — ECF No. 52.

1   settlement fair, adequate, and reasonable, and approves the final settlement, including fees, costs,

2   and the incentive award to the named plaintiff.

3                                          **STATEMENT**

4

5   **1.  The Lawsuit to Date**

6        The plaintiff filed the lawsuit in state court, and Meadowbrook removed the case and filed a

7   motion to dismiss.[5] The plaintiff filed the First Amended Complaint as a matter of right.[6] The

8   parties engaged in discovery.[7] After mediation with Michael Dickstein, a lecturer at Stanford Law

9   School and an experienced mediator in class actions, the parties settled their case.[8] The plaintiff

10  then filed an unopposed motion for preliminary approval and sought leave to file a Second

11  Amended Class Action and Individual Complaint ("SAC") for settlement purposes only. The

12  SAC subsumes a second class action filed in the Central District of California.[9] The court granted

13  leave to file the SAC for settlement purposes only, found preliminarily that it related back to the

14  filing date of the original complaint, and approved the settlement preliminarily.[10]

15  **2.  The Settlement**

16

17       The parties agreed to the following class definitions for settlement purposes only:

18       (a) All current and former California employees of Defendant, other than those in the
             Driver Class described below, for the time period commencing on September 9, 2013,
             through the date of preliminary approval of the settlement (the "Wage Statement Only
19           Class"); and

20       (b) All current and former truck drivers employed by Defendant in California from
             December 3, 2010, through the date of preliminary approval of the settlement (the
21           "Driver Class").[11]

22

23

---

24  [5] Notice of Removal — ECF No. 1; Motion to Dismiss — ECF No. 6.

25  [6] Amended Complaint — ECF No. 8.

    [7] *See* Case-Management Statements — ECF Nos. 15, 25, 35; Motion — ECF No. 37.
26
    [8] Scardigli Decl. — ECF No. 37-1, ¶ 4.

27  [9] Notice of Pendency of Other Action — ECF No. 38.

28  [10] Order — ECF No. 43 at 7.

    [11] Settlement Agreement — ECF No. 37-2 at 3.

1  The settlement class excludes any person who, as of the date of the court's preliminary

2  approval of the settlement, has a pending separate lawsuit as a named plaintiff, either individually

3  or as part of a putative class or representative action.[12]

4  In summary form, the settlement is as follows.

5  Meadowbrook will pay a total of $603,000, which is the "Gross Settlement Fund" or "GSF";

6  it will resolve all settlement class claims, fees, costs, incentive awards, administration fees, and

7  the PAGA allocation.[13] All monies will be paid out; there will be no reversion.[14] The claims

8  administrator will remit unclaimed funds to the State of California's unclaimed property fund.[15]

9  The Net Settlement Fund ("NSF") is the amount after fees, costs, the service award,

10 administration costs, and the PAGA allocation are deducted.[16]  Class members did not need to

11 submit a claims form; they received a notice with their estimated share of the NSF and had 45

12 days to opt out from or object to the settlement.[17] The notice process allowed settlement members

13 to dispute the amounts of their settlement payment and the number of pay periods implicated.[18]

14 The settlement agreement has the formula for calculating the settlement class members' shares

15 based on pay periods worked and a points system.[19]

16 There also is a separate settlement amount (not from the GSF) of Mr. Taylor's individual non-

17 wage-and-hours employment claims.[20] The settlement agreement provides for an additional

18 incentive award of $5,000 to Mr. Taylor.[21] Class counsel asks for $150,750 (or 25% of the fund)

19 in attorney's fees and $10,000 in costs.[22]

20

21 [12] *Id.*

[13] *Id.* at 2−8.

22 [14] *Id.*

23 [15] *Id.* at 14.

24 [16] *Id.* at 6.

[17] *Id.* at 10−11.

25 [18] *Id.* at 11−12.

26 [19] *Id.* at 10−11.

27 [20] Settlement Agreement — ECF No. 37-2 at 8–9.

[21] *Id.* at 8.

28 [22] Motion For Fees and Costs — ECF No. 7 at 1.

1    In return for the settlement relief, the settlement agreement has a release, which generally is

2   that class members who do not opt out of the settlement will release Meadowbrook and its

3   affiliates from all claims that are or could have been asserted in the SAC based on the facts and

4   legal theories alleged in the SAC.[23] The release includes a waiver of California Civil Code section

5   1542.

6

**3.   Notice to the Class**

7

8    The independent claims administrator is Simpluris, Inc.;[24] its responsibilities are in the

9   settlement agreement and include publishing class notice, establishing a website, distributing

10   funds to class members, preparing necessary tax forms, and otherwise administering the

11   settlement.[25] The administration costs were $19,000, which was the low bid by $9,500 from the

12   multiple bids that the plaintiffs solicited.[26] The court previously approved the form of notice and

13   the notice plan and directed notice.[27] The administrator complied with these procedures, including

14   obtaining Meadowbrook's class list, updating the addresses, and mailing the notices.[28] As of July

15   8, 2016, three packets were returned as undeliverable, one class member opted out, and no one

16   objected to the settlement.[29]

17                                    **ANALYSIS**

18   **1.   Jurisdiction**

19

20    This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

21

22

23

---

24   [23] Settlement Agreement — ECF No. 37-2 at 15−16.

     [24] Scardigli Decl. — ECF No. 48, ¶ 21.

25   [25] Settlement Agreement — ECF No. 37-2 at 9−10.

26   [26] Scardigli Decl. — ECF No. 48, ¶ 21 & Ex. B.

27   [27] Order — ECF No. 43 at 8–9.

28   [28] Scardigli Decl. — ECF No. 48, ¶ 21; Gomez Decl. — ECF No. 49-4, ¶¶ 5–9.

     [29] Scardigli Decl. — ECF No. 49-1, ¶ 11 & Ex. 2.

---

**2. Certification of Class**

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953.

Here, the factors support class certification of the proposed classes for purposes of settlement. First, the class size makes joinder impracticable. Second, there are common issues regarding the wage-and-hour claims. Third, the plaintiff's claims are typical of other class members' claims. *See Hanlon*, 150 F.3d at 1020 (claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical). Fourth, the named plaintiff is able to fairly and adequately protect the interests of all class members. The factors relevant to a determination of adequacy are (1) the absence of potential conflict between the named plaintiff and the class members, and (2) counsel chosen by the representative party who is qualified, experienced, and able to vigorously conduct the litigation. *Id.* The court is satisfied that the factors exist here: the named plaintiff has shared claims and interests with the class, and he retained qualified and competent counsel. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992).

Thus, the court finds (for settlement purposes only) that the proposed settlement class meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy: (1) the class is

1  so numerous that joinder of all members is impracticable; (2) there are common questions of law

2  and fact common to the class; (3) the claims or defenses of the representative parties are typical of

3  the claims or defenses of the class; and (4) the representative party will fairly and adequately

4  protect the interests of the class. *See* Fed. R. Civ. P. 23(a). The court also finds (for settlement

5  purposes only) that questions of law or fact common to class members predominate over any

6  questions affecting only individual members, and a class action is superior to other available

7  methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3);

8  *Brown v. Hain Celestial Group, Inc.*, No. 11-CV-03082-LB, 2014 WL 6483216, at *15–20 (N.D.

9  Cal. Nov. 18, 2014).  The court certifies the proposed classes under Federal Rule of Civil

10  Procedure 23(b)(3) for settlement purposes only.

**3.   Class Representative, Class Counsel, and Claims Administrator**

13      The court confirms its prior appointment of Mr. Taylor as the class representative and the

14  appointment of Simpluris, Inc., as the claims administrator.[30] The court appoints Mayall Hurley

15  P.C. as class counsel and Nicholas J. Scardigli and William J. Gorham III as lead class counsel

16  for settlement purposes only. *See* Fed. R. Civ. P. 23(a) & (g)(1). The court finds that they have

17  sufficient qualifications, experience, and expertise in prosecuting class actions.

**4.  Notice**

19      As described above, the claims administrator provided notice to the members of the class in

20  the form that the court had approved. The notice met all legal requisites: it was the best notice

21  practicable, satisfied the notice requirements of Rule 23, adequately advised class members of

22  their rights under the settlement agreement, met the requirements of due process, and complied

23  with the court's order regarding notice.

**5.  Compliance with the Class Action Fairness Act**

26      On February 29, 2016, Meadowbrook provided notice of the settlement and other information

27  showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the

28

---

[30] Order — ECF No. 43 at 8.

1   appropriate federal and state officials within ten days after the parties filed their settlement

2   agreement with the court.[31] The notice met the requirements of 28 U.S.C. § 1715 and was made

3   more than 90 days before the final approval hearing as required by 28 U.S.C. § 1715.

4   **6.   Approval of Settlement**

5       Settlement is a strongly favored method for resolving disputes, particularly "where complex

6   class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th

7   Cir. 1992); *see, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may

8   approve a proposed class-action settlement only "after a hearing and on finding that it is fair,

9   reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed

10  settlement is ideal or the best possible; it determines only whether the settlement is fair, free of

11  collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. See *Hanlon*

12  *v. Chrysler Corp.*, 150 F.3d 1011, 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified

13  factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the

14  risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

15  class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of

16  discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7)

17  the presence of a government participant; and (8) the reaction of class members to the proposed

18  settlement. *Id.* at 1026 (citation omitted).

19      "Where a settlement is the product of arms-length negotiations conducted by capable and

20  experienced counsel, the court begins its analysis with a presumption that the settlement is fair

21  and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal.

22  Apr. 22, 2010); *see Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a

23  good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . .");

24  *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

25      The court finds the settlement fair, reasonable, and adequate under the *Hanlon* factors.

26

27

28  _____

[31] Notice — ECF No. 39.

1    First, the settlement is fair because each class member who does not opt out will receive

2  payment according to a payment schedule that will depend on pay periods worked and a points

3  system.[32] This relief is adequate because "it is no less valuable than the economic relief" class

4  members might obtain without using the class-action process, while avoiding the delay, risk, and

5  expense of litigation.

6    Second, the settlement is reasonable considering the economic value to the class members

7  contrasted with the risk of litigating, given preemption issues under the Federal Aviation

8  Administration Authorization Act and other federal statutes and regulations.[33] Moreover, the

9  wage-statement claims required proof that the violations were a result of Meadowbrook's

10  "knowing and intentional failure" and that the drivers suffered injury; Meadowbrook asserted

11  defenses of good faith and lack of injury. Proof of the drivers-class claims involved proof that the

12  drivers were on call, that Meadowbrook did not provide meal-and-rest breaks, and that

13  Meadowbrook did not indemnify class members for expenses that they necessarily expended;

14  Meadowbrook contested these issues factually and legally. The litigation would be expensive and

15  protracted. The plaintiff represents that settlement and its points system address the risks so that

16  the overall settlement is fair.[34] The court reaches that conclusion.

17    Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and

18  was reached after private mediation.

19    In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair,

20  adequate, and reasonable" such that approval of the settlement is warranted. *See Officers for*

21  *Justice v. Civil Serv. Comm'n of the City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir.

22  1982). The court approves the settlement and finds that the SAC relates back to the filing date of

23  the original complaint.

24

25

26

---

27  [32] Motion For Final Approval — ECF No. 49 at 10–11.

    [33] *Id.* at 11.

28  [34] *Id.* at 11–12.

---

### 7.  Attorney's Fees and Costs

Class counsel asks for $150,750 (or 25% of the fund) in attorney's fees and $10,000 in costs.[35]

Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fee provisions included in proposed class-action settlements must be reasonable. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the amount of attorney's fees. *See id.* at 942–43. The Ninth Circuit has instructed district courts to review class fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). California fee-shifting statutes also authorize the award of fees. When a fee-shifting statute applies, courts may award fees on the lodestar method. *See California Practice Guide: Federal Civil Procedure Before Trial* § 10:870 (Rutter Group 2015) (collecting cases); *see PLCM Grp. v. Drexler*, 997 P.2d 511, 518 (Cal. 2000) (fee-setting inquiry under California law ordinarily begins with the lodestar); *Serrano v. Priest*, 569 P.2d 1303, 1316 n.23 (Cal. 1977). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon*, 150 F.3d at 1029.

When the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the total settlement. The Ninth Circuit has established a "benchmark" that fees should equal 25% of the settlement, although courts diverge from the benchmark based on a

---

[35] Motion for Fees and Costs — ECF No. 47 at 9.

1  variety of factors, including "the results obtained, risk undertaken by counsel, complexity of the

2  issues, length of the professional relationship, the market rate, and awards in similar cases."

3  *Morales v. Stevco, Inc.*, 2013 WL 1222058, *2 (E.D. Cal. Mar. 25, 2013); *see also Morris v.*

4  *Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Pacific*

5  *Enterprises*, 47 F.3d at 379 (same); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *Six*

6  *Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

7      When determining the value of a settlement, courts consider the monetary and non-monetary

8  benefits that the settlement confers. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 972–74 (9th Cir.

9  2003); *Pokorny v. Quixtar, Inc.,* 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) ("The court may

10  properly consider the value of injunctive relief obtained as a result of settlement in determining

11  the appropriate fee."); *In re Netflix Privacy Litig.*, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18,

12  2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of

13  distribution, and the injunctive relief").

14      Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total

15  benefits being made available to class members rather than the actual amount that is ultimately

16  claimed. *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, *23 (N.D. Cal. Mar. 28, 2007)

17  (citing *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026 (9th Cir. 1997) ("district court

18  abused its discretion in basing attorney fee award on actual distribution to class" instead of

19  amount being made available) (quoted language from *Young*)).

20      If the court applies the percentage method, it then typically roughly calculates the lodestar as a

21  "cross-check to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg*

22  *Co.,* 2013 WL 6531177, *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25,

23  48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980); *Melnyk v.*

24  *Robledo,* 64 Cal. App. 3d 618, 624 (1976); *Clejan v. Reisman*, 5 Cal. App. 3d 224, 241 (1970).

25  "The lodestar . . . is produced by multiplying the number of hours reasonably expended by

26  counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19,

27  26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by

28  applying a positive or negative "multiplier to take into account a variety of other factors,

1    including the quality of the representation, the novelty and complexity of the issues, the results

2    obtained, and the contingent risk presented." *Id*.

3        Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed.

4    R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover

5    reasonable expenses that would typically be billed to paying clients in non-contingency matters.);

6    *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving

7    reasonable costs in class action settlement). Costs compensable under Rule 23(h) include

8    "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

9        Based on the declarations submitted by the plaintiff's counsel, the court finds that the lodestar

10   is approximately $80,000 as of June, which was before the plaintiff filed the motion for final

11   approval.[36] The billing rates are within normal and customary ranges for timekeepers with similar

12   qualifications and experience in the San Francisco market. The rates counsel used are appropriate

13   given the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v.*

14   *Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should

15   be applied in order to compensate for the delay in payment . . . .") (citing *Missouri v. Jenkins*, 491

16   U.S. 274, 283-84 (1989)); *In re Washington Pub. Power Supply Sys. Secs. Litig.,* 19 F.3d 1291,

17   1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of

18   two ways: (1) by applying the attorneys' current rates to all hours billed during the course of

19   litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.").

20   Counsel also submitted a sufficient breakdown of the attorneys' billing efforts for the court to

21   reach its conclusion about the lodestar.

22       The court concludes that a fee award at the 25% benchmark under the "percentage of the

23   fund" approach is justified. *See Hanlon*, 150 F.3d at 1029. It is appropriate based on counsel's

24   efforts and the substantial benefits to the class. It is similar to awards in other cases. It is

25   supported by the lodestar cross-check, including a multiplier to reflect the results obtained, the

26   efficiency of the litigation, the quality of the representation, and the contingent risk.

27       The court awards costs of $10,000 and $19,000 for the claims administration.

28

---

[36] Scardigli Decl. — ECF No. 48, ¶¶ 5−18.

**8.   Service Award**

District courts must evaluate proposed incentive awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). The Ninth Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

Counsel described sufficiently the efforts of the named plaintiff, including consulting with counsel, spending over 14 hours in mediation, being deposed, and otherwise participating in the litigation.[37] The court approves the $5,000 award.

## CONCLUSION

The court certifies the classes set forth in the Statement for settlement purposes only and approves the class-action settlement for a total settlement amount of $603,000, which is allocated as follows: (1) $410,750 to the class members, to be distributed according to the formula in the settlement agreement; (2) $7,500 to the California Labor and Workforce Development Agency ("CLWDA") for its share of the settlement of the PAGA civil penalties of $10,000; (3) $150,750 for attorney's fees; (4) $10,000 for costs; (5) $19,000 to Simpluris, Inc., for administration fees; and (6) $5,000 to Mr. Taylor as a service award for serving as the class representative.

---

[37] *Id.* ¶ 20.

1    Pursuant to Federal Rule of Civil Procedure 23(c)(3), all class members who satisfy the class

2  definition except for those class members who timely opted out are class members bound by this

3  judgment and by the terms of the settlement agreement set forth at ECF No. 37-2.

4    Based on this final approval of the settlement, each settlement class member, the LWDA, and

5  the plaintiff/class representative have released Meadowbrook Meat Company, Inc., from the

6  released claims as set forth in paragraphs 32 and 33 of the settlement agreement.[38] They are

7  enjoined from pursuing the released claims as set forth in paragraph 34 of the settlement

8  agreement. [39]

9    The court dismisses the case with prejudice, and the defendant is hereby released from all

10  further liability for the released claims.

11    The court finds that no reason exists for delay in ordering final judgment pursuant to Federal

12  Rule of Civil Procedure 54(b) and thus directs the entry of judgment forthwith.

13    This disposes of ECF Nos. 47 and 49.

14    **IT IS SO ORDERED.**

15    Dated: September 15, 2016                    _____

16                                                                  LAUREL BEELER
                                                                    United States Magistrate Judge
17

18

19

20

21

22

23

24

25

26

27

28

---

[38] Settlement Agreement — ECF No. 37-2, ¶¶ 32–33.

[39] Settlement Agreement — ECF No. 37-2, ¶ 34.

ORDER APPROVING CLASS-ACTION SETTLEMENT
No. 3:15-cv-00132-LB